IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ARTHUR JOSEPH GAINES,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-1074-STE |
| ) | |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

**I.     PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 23-33). The Appeals Council denied Plaintiff's request for

review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 17, 2017, the application date. (TR. 25). At step two, the ALJ determined that Mr. Gaines had the following severe impairments: status post reconstructive surgery of a weight-bearing joint (left total hip arthroplasty) and a spine disorder. (TR. 25). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 27).

At step four, the ALJ concluded that Mr. Gaines retained the residual functional capacity (RFC) to:

> [P]erform light exertion work as defined in 20 CFR 416.967(b), except the claimant can occasionally climb ladders [,] ropes and scaffolds; and the claimant can frequently climb ramps and stairs. The claimant has no other physical limitations or restrictions. The claimant has no mental limitations or restrictions.

(TR. 27).

At the administrative hearing, a vocational expert (VE) testified that Mr. Gaines had performed past relevant work as:

- a "spring inspector II," which was classified in the Dictionary of Occupational Titles (DOT) under code # 709.687-038; performed at the "light" exertional level, with a specific vocational preparation level (SVP) of 2 and

2

- a "cashier," which was classified in the DOT under code # 211.462-014; performed at the "light" exertional level, with a specific vocational preparation level (SVP) of 3.

(TR. 75). The ALJ then asked the VE whether Plaintiff could perform this past relevant work, as the work was actually performed and is generally performed, given the limitations in the RFC. (TR. 86). The VE replied affirmatively. (TR. 86). Ultimately, the ALJ adopted the VE's testimony and concluded that Mr. Gaines was not disabled at step four. (TR. 24).

### III. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

**IV.    ISSUE PRESENTED**

On appeal, Plaintiff alleges error at step four. (ECF No. 21:8-15).

**V.     ERROR AT STEP FOUR**

At step four, the ALJ concluded that Mr. Gaines was not disabled because he could perform his past relevant work as a cashier and spring inspector II, as he had performed those jobs and as the jobs were generally performed in the national economy. (TR. 32-33). Plaintiff challenges the step four findings, arguing: (1) the cashier job did not qualify as "substantial gainful activity"[1] and (2) the ALJ erred in concluding that Plaintiff could perform the job of spring inspector II, because Mr. Gaines' job, as he performed it, was actually a "composite" job, which the ALJ failed to investigate and consider. (ECF No. 21: 11-15). The Commissioner concedes that the cashier job did not meet the wage requirements to qualify as "substantial gainful activity" as necessary to constitute "past relevant work." *See* ECF No. 25:4. Thus, the only issue before the Court is whether the ALJ erred in concluding that Mr. Gaines could perform his past relevant work, as he performed it, or the job of spring inspector II, as that job is generally performed. The Court answers this question affirmatively.

**A.     The ALJ's Duties at Steps Four**

At step four of the disability determination, the ALJ must complete three phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), … and in the second phase, he must

---

[1] To qualify as substantial gainful activity, work must meet a minimum wage threshold during the relevant past (i.e., during the prior 15 years). *See* 20 C.F.R. § 416.960(b)(1); SSR 82–62, 1982 WL 31386, at *2.

>     determine the physical and mental demands of the claimant's past relevant
>     work.... In the final phase, the ALJ determines whether the claimant has
>     the ability to meet the job demands found in phase two despite the mental
>     and/or physical limitations found in phase one.... At each of these phases,
>     the ALJ must make specific findings.

*Bowman v. Astrue,* 511 F.3d 1270, 1272 (10th Cir. 2008) (citation omitted). Findings at each phase of step four must be supported by substantial evidence. *See Watkins v. Barnhart,* 350 F.3d 1297, 1299 (10th Cir. 2003).

### B.    The ALJ's Findings at Step Four

At phase one of step four, the ALJ concluded that Plaintiff had retained the physical RFC to "perform light exertion work as defined in 20 CFR 416.967(b), except the claimant can occasionally climb ladders ropes and scaffolds; and the claimant can frequently climb ramps and stairs." (TR. 27). At phase two, the ALJ concluded that Mr. Gaines' past work at the Cannon Spring Company qualified as a spring inspector II, DOT #709.687-038, which was classified as "light" and "unskilled," with an SVP of two. (TR. 32). At phase three, the ALJ concluded that with the aforementioned RFC, Mr. Gaines was able to perform the job of spring inspector II, both as Plaintiff actually performed that job and as the job was generally performed in the national economy. (TR. 33).

### C.    Error at Phases Two and Three

Plaintiff alleges error at phases two and three. At phase two, Mr. Gaines takes issue with the ALJ's classification of his former job as a spring inspector II, arguing that the job was actually a "composite" job, whose main duties fell under two positions listed in the DOT—spring inspector II (DOT # 709.687-038) and hand packager (DOT # 920.587-018). Plaintiff argues that the error at phase two caused error at phase three as

5

to both of the ALJ's findings—first, that Plaintiff could perform the job as he had performed it, and second, that Plaintiff could perform the job as it is actually performed in the national economy. (ECF No. 21:11-15). The Court agrees with Mr. Gaines.

Regarding the error at phase two, the Court agrees that Mr. Gaines' past work actually qualified as a "composite" job, which included duties from two jobs classified in the DOT—spring inspector II and hand packager. Composite jobs "have significant elements of two or more occupations and, as such, have no [single] counterpart in the DOT." SSR 82-61, 1982 WL 31387, at * 2 (1982). According to the Commissioner's Program Operations Manual System ("POMS"):[2]

- The claimant's PRW may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant.

- If you determine that PRW was a composite job, you must explain why.

- When comparing the claimant's RFC to a composite job as the claimant performed it, find the claimant capable of performing the composite job only if he or she can perform all parts of the job.

- A composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work "as generally performed in the national economy."

POMS DI 25005.020, Section B.[3]

---

[2] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

[3] *See* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020.

6

Although the ALJ did not ask Mr. Gaines about his job duties at the administrative hearing, the record contains evidence of a "Work History Report" completed by his wife on his behalf, which states that in the former job:

> [Plaintiff] would sort, count, & inspect coil springs. Coils must meet blueprint specifications. If not they were placed aside. He would then take coil springs to ship them. He would wrap coils in paper, place them in boxes, then seal boxes for shipping. This was all day every day.

(TR. 231). The report went on to state that on the job, Plaintiff lifted and carried "all sizes of coil springs … from one side of [the] warehouse to the other side" with the heaviest weight lifted being 100 lbs. or more, with "frequent" lifting of 50 lbs. or more. (TR. 231).

The Commissioner argues that the job was not "composite" "[b]ecause the vast majority of Plaintiff's duties were duties performed by a spring inspector II." (ECF No. 25:6). The Court disagrees. The DOT states that an individual performing a spring inspector II job:

> *Removes springs from conveyor belt and inspects them for defects*, such as missing or bent leaves, clips, and bushings, and excessive spacing between leaves: *Measures spring dimensions to verify specifications*, using rule and micrometer. Marks spring to indicate defects, using crayon. Notifies supervisor when springs indicate specified types and quantity of defects that require rework. *Separates and stacks defective and acceptable springs.* Straightens defective springs, using hammer.

(DOT # 709.687-038). The italicized portion of the job description accurately defines a duties of Mr. Gaines' job, as set forth in the Work History Report. *See supra*. The DOT states that an individual performing a hand packager job:

> *Packages materials and products manually,* performing any combination of following duties: Cleans packaging containers. *Lines and pads crates and assembles cartons. Obtains and sorts product. Wraps protective material around product.* Starts, stops, and regulates speed of conveyor. Inserts or pours product into containers or fills containers from spout or chute. Weighs

7

> containers and adjusts quantity. *Nails, glues, or closes and seals containers. Labels containers, container tags, or products. Sorts bundles or filled containers. Packs special arrangements or selections of product. Inspects materials, products, and containers at each step of packaging process.*

(DOT # 920.587-018). The italicized portion of this job description also accurately defines a portion of Mr. Gaines' job, as defined in the Work History Report. *See supra*. Ultimately, the Court finds that the former job, as performed by Mr. Gaines was "composite" in nature, requiring "significant elements of two or more occupations" from the spring inspector II job and the hand packager job, equally.

Because the job was "composite," consisting of duties from both jobs, the ALJ was prohibited from relying on the DOT counterpart of spring inspector II to conclude that Mr. Gaines was capable of performing that job as it is performed in the national economy. *See supra*, POMS DI 25005.020, Section B ("A composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work "as generally performed in the national economy."); *Armstrong v. Colvin*, 2016 WL 6581343, at *3 (W.D. Okla. Nov. 4, 2016) (finding that where claimant's job was "composite," ALJ erred in concluding that claimant could perform the job "*as generally performed*." (emphasis in original). Thus, the error at phase two could only have been harmless at phase three if the ALJ found Mr. Gaines capable of performing "all parts" of the job as he had actually performed it. *See supra*, POMS DI 25005.020, Section B ("When comparing the claimant's RFC to a composite job as the claimant performed it, find the claimant capable of performing the composite job only if he or she can perform all parts of the job.").

But here, the composite job required "light" exertional duties (duties from the "spring inspector II" job) and "medium" exertional duties (duties from the hand packager

8

job). *See* DOT # 709.687-038 & 920.587-018. And the ALJ concluded that Mr. Gaines was limited to only performing "light" work. *See* TR. 27. Thus, the ALJ's step four finding that Plaintiff could perform the job as he had actually performed it constituted reversible error. *See Lyda v. Colvin*, 221 F.Supp.3d 1254, 1259 (D. Colo. Oct. 28, 2016) (finding reversible error at step four because the ALJ's finding of a "light" RFC precluded claimant from performing the "medium" exertional functions required by a composite job, as claimant had actually performed the job).

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.[4]

ENTERED on September 16, 2020.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court notes Plaintiff's statement that "because a correct application of the relevant legal principles in this case should have precluded a step four denial … Mr. Gaines would have almost certainly have been entitled to a finding of disability under 20 C.F.R. Pt. 404, Subpt., P, App. 2 § 202.06." (ECF No. 21:14). But because Plaintiff requested only that the case be remanded for further administrative proceedings, the Court will not consider the propriety of applying the Grids to reach a finding of disability. (ECF No. 21:15).